May it please the Court, my name is David Furbush and it is my pleasure to be in this beautiful courtroom, in this beautiful courthouse. I represent the plaintiff below, Alan Kalin, who is the appellant in this case. From time to time I will refer to him as the plaintiff and the appellees as the defendants. The District Court made several serious errors in determining that the amended complaint did not state a claim under the California securities laws. The most glaring error was the determination that rigorous stress testing means only some form of stress testing. Related to that was the Court's determination that there are no accepted methods of liquidity stress testing. The Court also erred in determining under the allegations of the complaint taken as a whole that ample liquidity was mere puffery and determining on some basis that there was no falsity in the claim of hedging mechanisms. In construing rigorous stress testing to mean only some form of stress testing, the Court misconstrued Ahearn v. Apple. Ahearn did not purport to define rigorous as some sort of. It merely determined on the facts of the pleadings in that case that the claim of rigorous testing was not puffery and could be objectively determined. Ahearn and Sanders are District Court cases. Do you have any Ninth Circuit cases that you can rely on for your position on rigorous stress testing? I have never seen a case, and the defendants did not cite one, that described rigorous stress testing to mean only some form of stress testing. I think the word rigorous is well understood. It's in every English dictionary. We cited many of the dictionary definitions. Courts routinely apply the concept of rigor to various tests that they apply, and never has any dictionary or any court, other than the court below, said that rigorous means only some form of. The claim of rigorous stress testing is false because it requires adherence to well-established principles of stress testing that call for application of extreme but plausible scenarios. We cite many sources in our amended complaint and in our opening brief to support the proposition that, although the form of stress testing and the type of scenario employed will always vary from circumstance to circumstance, what they all have at their heart is the requirement of using extreme but plausible scenarios in the stress testing. The trier of fact should be able to determine whether or not stress testing— Isn't the fact that you have so many different potential definitions of stress testing actually undermine your argument that there is an industry standard or something that would be objectively verifiable? No, not at all. With that statement? Why not? Because you don't seem to be able to say there's consensus on what that even means. There is consensus, and I thought we made this very clear. There is consensus that what all accepted methods of stress testing require is the application of a scenario, and a scenario that posits an extreme but still plausible set of situations. Clearly, it will be different for different entities depending upon the nature of the risks that they face. It will depend in different industries on the nature of risks that they face. It may vary from time to time what the risks are, either historical or anticipated. But at the heart, the uniform standard is that it has to apply a scenario that is extreme but plausible. Which one do you think is your strongest misrepresentation? Rigorous liquidity testing. Because liquidity is the source of the failure in this case. Why wouldn't it be hedging strategies? Because you could verify whether a hedging strategy was used or not. Absolutely correct. But you didn't list that one as your strongest one. No. Why? Why? That seems like the only one that seems potentially objectively verifiable. Did you use a hedging strategy or not? Yeah. And the defendants argue that the offering memorandum and other materials only indicated that hedging would be used for liquidity risk. But that is not what the offering materials say. The offering memorandum, this appears at page 183 and 184 of the excerpt of the record, says that hedging instruments will be utilized to manage portfolio risks, which I believe is different from interest rate risks. The fund fact sheets at pages 242 and 245 of the excerpts state that the fund, quote, employs hedging strategies designed to manage interest rate, credit spread, and other risk factors, implying that they are used for purposes in addition to interest rate risk. The claim of ample liquidity is clearly important to investors. Stress testing works in tandem with formation of a liquidity contingency plan, as we explain in our briefs and in our complaint. The stress test will determine what level of liquidity is ample. The trier of fact, with the assistance of experts, should be able to determine, if a stress test was done at all, what the degree of liquidity would have been required by that stress test. The court also erred in determining there was no personal jurisdiction for the control defendants. We cite and rely heavily on the San Mateo case. The court and the defendants... But do you concede that you haven't alleged minimum contacts for the defendants with California? Do you think you don't have to? The court in San Mateo did not refer to any case involving minimum contacts. It did not mention minimum contacts. Okay, so let's back up. Did you make any allegations of minimum contacts? Minimum contacts derive from agency principles. What Hollinger versus Titan... Please answer my question. Have you asserted any allegations of minimum contacts with the defendants with the state of California? I didn't see any, but perhaps you can point me to where it might be in the record. We allege that the control defendants are subject to personal jurisdiction because they control an entity that admittedly has minimum contacts with California. As I said, the principle of agency is what imputes minimum contacts to the control persons. But doesn't that conflate the control person liability with personal jurisdiction? I think what you the mere allegations that the control defendants, and I think this is the total sum of allegations in the complaint, that they controlled the fund and necessarily would have known that the fund offered investments to Californians. But don't we need to analyze these particular defendants' contacts with California? And doing what you're suggesting, which is to simply conflate the control person liability with personal jurisdiction doesn't really address the issue of personal jurisdiction and minimum contacts. So the court in San Mateo, the only case it really relies on is Hollinger versus Titan. Hollinger versus Titan was a landmark case in this circuit that equates control person status under the federal securities laws with principles of agency and vicarious liability. Hollinger uses the words vicarious or vicariously 16 times. Can I ask you a question? You concede that California's long-arm statute applies, right? For service of process, yes. So California's long-arm statute includes a minimum contacts requirement, correct? It includes a requirement of conformity to the Constitution, yes. So it would require a minimum contacts analysis? Yes. Okay. And I'm saying that the minimum contacts are served through the principle of agency. Again, Hollinger uses the word vicarious and vicariously, agency, and principle and agent over and over again. And this court in 2001 held, in the case of Myers versus Bennett Law Offices, 238 F. 2nd. 1068 at 1073 that, and I quote, For purposes of personal jurisdiction, the actions of an agent are attributable to the principle. And that doctrine has been followed in, at least by my research, the Seventh Circuit, the First Circuit, and the Federal Circuit. But that is the subtle law of this circuit. If we disagree with your argument that the minimum contacts requirement is satisfied through these agency principles, then would you agree that there are no other allegations that establish the minimum contacts of the controlled defendants in the State of California? There are no allegations on that because we were denied the opportunity to conduct discovery into that. And that is another point that we allege is that the court abused its discretion in not allowing adequate discovery into that. But, yes, absent discovery, we have no basis for alleging personal minimum contacts of the controlled defendants with the forum, California. And so what, I'm sorry, go ahead, Judge. No, go ahead. I think you're talking about the interrogatories that you sought to compel the defendants to respond to. Is that what you're referring to when you say you weren't permitted to conduct adequate discovery? Yes. Okay, so explain to me why those interrogatories were relevant to the issue of personal jurisdiction. Because as I see them, they really don't go to the minimum contacts. We sought evidence that the control persons were personally involved in the drafting and dissemination of the offering materials to citizens of California, a direct, purposeful direction of activities into the state and into the citizens of the state. But we don't have detail to support that allegation absent discovery. But you did receive 85 pages of interrogatory responses on personal jurisdiction, correct? Yes, and they were full of word salad. Assessed defendants' declarations. They were full of word salads of, you know, extensive disclaimers and hedging and no clear answers to our questions. All right. You have one minute and 55 seconds left. Would you like to save that for rebuttal? Yes. Okay. Good morning. May it please the Court. I'm Jeremiah Williams of Ropes and Gray on behalf of defendant's appellees. I would like to cover a couple of points about the fund that I think will be helpful for the Court in its determination, and then I'd like to respond to a few points that the plaintiff has raised. In terms of the fund, this was not a fund that was open to the general public. This was a fund that was limited to accredited investors who are deemed under federal securities laws to be qualified to invest in complex and high-risk securities. The term high degree of risk is mentioned throughout the disclosures, including on the record page 176 and 198. The fund was very clear that it was invested in non-agency mortgage-backed securities. That's an important distinction because those securities are not liquid. And, again, on the record page 210 and then 201, it talks about how non-agency mortgage-backed securities are less liquid and the consequences of that lack of liquidity, potential consequences. The disclosure is also very clear about the risk from level. It's somewhat unfair, though, to have, in one place, saying, oh, our hedging can fully offset any losses, so you won't have any losses, and talk about risk mitigation and everything, but then, you know, a few pages later also say, oh, but you may lose all of your investment. I mean, aren't you kind of sending mixed signals to investors? I don't believe we are, Your Honor. A couple of points about hedging that I think are relevant. First is that when hedging is mentioned, it is mentioned in a context of interest and credit hedging. I refer you to the record page 209, where it talks about hedging interest and credit exposure. There is no disclosure about hedging liquidity risk. But you would agree that whether the fund engaged in a hedging strategy or not is something that's objectively verifiable, right? Yes. Did you hedge or not? Right. So you haven't alleged that that particular misrep is puffery, right? You haven't alleged that. You've just said a reasonable investor wouldn't be misled. Is that right? That's correct, Your Honor. Okay. So you agree it is objectively verifiable, though? Whether you hedged or not, yes. That's correct. Okay. In the same way that you can verify whether someone did any testing or not from the point of view of the rigorous standard, Your Honor. Now, Mr. Kalin alleges there was no hedging at all. So then why shouldn't that survive a motion to dismiss? If you're saying it is objectively verifiable, it's not puffery, and his allegation, and we have to give it credit on motion to dismiss, says there was no hedging. Your Honor, I don't believe he says specifically in that way that there was no hedging at all. He really, his allegations go towards whether the hedging was sufficient. He doesn't say no hedging occurred whatsoever. I do not believe he says that. Thank you. Well, he says on ER-100, second, there was no hedging vehicle in place to protect against a situation undisclosed in the offering memorandum where collateral is marked to market every day in which a margin call would have to be satisfied within by the close of business the following day or else see the collateral sold at fire sale prices. That's different from saying there's no hedging that occurred at all, Your Honor. Why? Yes, yes. Why is that different? Well, because that's talking about hedging in a very specific context. As I said before, when the disclosure about hedging, you talk about different types of hedging. You talk about interest rate hedging and credit hedging, which is different from the risk that Your Honor is speaking to. So hedging can be respected different types of risk. Okay. I mean, I guess I'm looking at ER-209, and I mean I see there's two sections above. It says interest rate and credit exposure not eliminated by hedging activities. Then it says basis risk, and then it says collateral risk. And this language about, you know, if hedging strategies are followed, the decrease in value of the mortgages will be substantially, if not fully, offset by the hedging vehicle is in the collateral risk section. I guess I'm unclear on why this part of the complaint doesn't. And we're talking, Your Honor, just so I understand your question, you're talking specifically about the hedging that's mentioned in the collateral risk section. Is that what you're speaking to? No. I'm just speaking to you just conceded that the hedging strategy's alleged misstatement is not puffery and that it could be objectively verifiable. So then the question is, if there's an allegation that there was no hedging vehicle in place in the complaint on ER-100, why isn't that, you know, sufficient to survive a motion to dismiss? That's my question. Yes. So the specific representation that plaintiff says is misleading is a certain amount of risk. Repurchase agreements present a certain amount of risk, but utilizing hedging strategies would substantially, if not fully, offset that risk. That's really the statement that the plaintiff is speaking about. Yes. That statement does not say specifically that no hedging at all occurred. And if I could speak to that specific statement, I think there's a couple things to keep in mind. One is, you know, it's preceded by generally. It says generally this would be the case, and in the context of a pandemic where you have unprecedented financial liquidity crisis, that certainly is not something that a reasonable investor would view that falls within general. And that disclosure also talks about leverage and how, you know, the risk from leverage and liquidity and how that can affect things as well. So are you saying that if means we were not obligated to follow an appropriate hedging strategy? Is that your argument? Yes. But why wouldn't, if I'm an investor and I read that, generally, if an appropriate hedging strategy is followed, the decrease in the value of the mortgages will be substantially, if not fully, offset by the hedging vehicle. I read that and I think, oh, they're going to follow an appropriate hedging strategy. But why should I not? Your Honor, I think the best way to read that is that a hedging strategy is a tool, a risk management tool that can be used to address risk. It is a tool that they have. The disclosures give the investment advisor a lot of discretion as far as how they're using various tools, when or if they use hedging. In some cases, they may hedge. In some cases, they may not. They're not making a commitment here to hedge in every circumstance or hedge every type of risk. I think another point that's worth mentioning, Your Honor, is that when we talk about hedging and these risk management tools, these are not without cost. The more downside protection that is entailed, that affects returns. It's a tradeoff between risk and reward. And you could have had a fund that was lower risk that used more hedging and more downside protection. That would have come at the cost of return. And this is a fund where they marketed and were very transparent that it was highly leveraged. There was twice as much debt as there was equity. That was in the fact sheets. That's uncontested. So this was a highly leveraged, aggressive investment strategy. And so in the context of investment strategy, yes, hedging is something that they could use, but it is not something they were promising to use in all instances. And even if they did use it, it was not guaranteed to be effective in all instances. Is there anything else in this document that would inform an investor that they're not necessarily going to use a hedging strategy? I would say two things. I would say that the way hedging is used is talked about as a tool at disposal, not something that's going to be used in every instance. And also I would say if you look at the disclosures overall, and I mentioned the fact sheets, those show very high returns, much higher than comparable fixed income investments. And I think the disclosures overall do suggest an aggressive strategy that certainly show a reasonable investor that there is not a lot of downside protection because you cannot maintain those returns employing a tremendous amount of downside protection. That's not possible. I mean, I certainly see a lot of disclosures here about you may lose all your investment, you may lose all your investment, you can suffer substantial losses, definitely a high degree of risk. But I guess the hedging one is still the one that bothers me. I don't know if there's anything else you can point to. Your point originally was that, oh, it only had to do with interest rates, is that? My point is that when you look at hedging, and I will point you to, you know, page 209 of the record, for instance, when hedging is mentioned, it is mentioned with respect to interest and credit risk. Those are the risks the investment advisor had in mind when they spoke of hedging. Okay. Let me ask you something. If we were to affirm on 12v6 failure to state a claim grounds, do we need to address personal jurisdiction at all or not? No, the merits would dispose of this. There's no reason you'd have to address personal jurisdiction. I'm looking at this hedging language. It says the partnership's hedging positions are not designed to generate profits, that in every situation will fully offset the losses on the partnership's positions that would occur from changes in interest rates and credit exposure. It says sufficiently large and sudden movements in interest rates could result in substantial losses, possibly loss of limited partners and entire investment. Is that what you're saying should be the response to the hedging position? Or is that in a different context? You're saying hedging is in a different context. So I'm sorry, I don't want to— Your Honor actually made my point because that also, again, specifically mentioned interest rate, risk, and credit. Interest and credit are the two contexts in which hedging is mentioned. That's the exact point I was making, Your Honor. But the statement that Mr. Kalin is asserting is a misrep is not in that section. Yes, I think this is maybe— Yes, I think this is the confusion, is that his statement is really in a collateral risk section, which is separate from interest and credit hedging that you're speaking about, and it's specifically collateral risk deals with the margin call risk, which is what happened with the fund. That is a distinct risk. I am totally confused, and I don't want to take up the whole time. But what is he referring to when he says there's no hedging vehicle in place to protect against the situation? Is he talking about the collateral risk situation, or he's talking about the interest rate and credit exposure situation? That misrepresentation goes to repurchases, repurchase agreements. So I believe it's the collateral risk that's the logical conclusion for that because if you look at the pleadings, when he talks about utilizing hedging strategies and a certain amount of risk, that is from the collateral risk section. That's dealing with repurchase agreements or repos. So if he alleges in that context there was no hedging vehicle at all, then why shouldn't he survive motion to dismiss? Because this is a misrepresentation case. There's no misrepresentation. There's no representation that there was a hedging strategy for that specific risk. There's no statement he can point to. Judge Gould, if I could interject. On this point you're making right now, can there be an implied misrepresentation, or does it have to be explicit and expressly said? Your Honor, I believe that even if it was, I don't think a reasonable investor would imply that meaning of misrepresentation. The Fund is very clear about the types of risk when it talks about hedging, and I don't think there's any implication. The reason I say that, Your Honor, is because it's very clear about the risk from the call, from margin calls. This is something that's specifically mentioned. You have illiquid securities that are highly leveraged, and if there's a margin call, that can lead to loss. That's something that's quite clear here. And just to say it, I don't want to get beyond the record, but it's not clear to me there's a great way to hedge that without really affecting the returns. And again, we could have had a different investment strategy with more protection, but that wasn't this investment. This was an investment that was marketed towards accredited investors that had an aggressive investment strategy, as it disclosed. Your Honor, there's just a few points I wanted to just hit upon. With respect to the rigorous, and we talked about a Ninth Circuit, if there's any Ninth Circuit law on this, I just want to direct Your Honors to South Flint Sod Farms. It's a Ninth Circuit case that is cited in the Apple Ahern case, and that stands for the specific proposition that something has to be specific and measurable. That's actually what the Apple court looks to. So there is actually Ninth Circuit law on this point, Your Honor. And then I just wanted to also, as Your Honor addressed before, with jurisdictional discovery, that is, as you know, due to abuse of discretion, and there was a voluminous amount of discovery that was produced, and the district court made a finding that that went to the merits and not to jurisdiction. Happy to answer any other questions you may have. There's a small amount of time remaining. Judge Gould, any more questions? Okay, thank you. Thank you. You have a minute and 55 seconds. At the bottom of ER 183, the heading appears, hedge instruments. And at the top, the immediately following sentence is, the partnership will also utilize the following instruments in managing portfolio risks and in achieving other portfolio objectives. All right, so then what are you alleging didn't happen? Financial options, interest rate, credit default swaps, interest rate caps, forward commitment in long or short positions in treasury bonds, options or indexes on mortgage securities. What are you alleging? And I don't see that in your complaint. I'm not an expert in methods of hedging. What we're saying is there was no hedging whatsoever of any of these species of hedging to protect against the risk that actually occurred. And, again, if the court looks at the fund fact sheets on 242 and 245, the following sentence appears. The fund employs — Okay, what other than page 100 of ER 100? Tell me, where do you say that you don't have those items listed on ER 184? I said that there was no hedging strategy designed to protect against the risk that actually occurred. No, you said there was no hedging vehicle in place. No hedging vehicle to protect against the risk that actually occurred. ER 100, that's it for your complaint. All right, go ahead. What else were you going to say? Yes, and it's ironic that Mr. Williams emphasizes the highly leveraged and aggressive strategy followed by the fund and then chooses to minimize the importance of the things that my client reasonably considered important, such as stress testing, adequate liquidity, and hedging vehicles. Counsel, Judge Gould, if I could interject. Of course. What's your best argument that there was an express misrepresentation in the offer? Again, as I responded to Judge Koh, we think our strongest argument has to do with the claim of rigorous liquidity stress testing. We believe that that simply did not occur, and we believe that that is an objective, verifiable fact that could be determined with evidence and expert opinion. Counsel, is there a place where the offer says we will engage in rigorous stress testing? Yes. Okay, thank you. Well, it says the investment manager engages in rigorous qualitative and quantitative analysis, including but not limited to, but it doesn't say exactly what. Anyway, I'll leave it at that. Thank you. All right, thank you. All right, that case is submitted.
judges: GOULD, KOH, DESAI